No. 680

First Circuit

——

BERRY v. GREAT SOUTHERN LBR. CO.

——

(October 8, 1930. Opinion and Decree.)
(January 26, 1931. Rehearing Refused.)

——

Ott & Rich, of Bogalusa, and Tracy & Neuhauser, of New Orleans, attorneys for plaintiff, appellant.

Ott & Johnson, of Franklinton, attorneys for defendant, appellee.

LeBLANC, J. Plaintiff, Nancy Berry, brought this suit against the defendant, Great Southern Lumber Company, for compensation for the death of her brother, John

Berry, on whom she alleges she was dependent. He was employed by defendant in its sawmill at Bogalusa, La.

She avers that he had no wife with whom he was living or who was dependent on him for support at the time of his injury and death, nor did he have any child or children, nor dependent parent or parents. She avers further that she was his sister and was wholly and fully dependent upon him for support, and as there were no other dependents she is entitled to be paid the compensation that is due him under the Workmen's Compensation Law of the state (Act No. 20 of 1914, sec. 8, subsec. 2(D), as re-enacted by Act No. 242 of 1928). As a dependent sister, she claims 32½ per cent of his weekly wages, which she alleges were $30.24, for the period of three hundred weeks.

The defendant admits the employment and accidental death of the deceased, avers that his average weekly wage at the time of his death and for more than a year prior thereto was $14.75, admits that he had no wife, children, or dependent parents, but denies the dependency of the plaintiff and any consequent liability for compensation to her.

After hearing evidence on the trial of the case which involved only the question of dependency, the trial judge rejected plaintiff's claim and dismissed her suit at her costs, and an appeal was taken to this court.

The testimony reveals that this plaintiff was living at the time of her brother's death, and for more than eleven years prior, at a place called D'Lo, Miss., about one hundred miles from Bogalusa. She was forty-two years of age at the time of the trial of the case in the district court and seems to have had quite a hectic career as far as her matrimonial experience is concerned, as we find from her testimony that before her first marriage she was already the mother of two boys who bore the name of Bass; she was afterwards married to a man by the name of Wright, of whom she says, "It was reported to me, he got in trouble and his brother notified me he had got killed"; and finally contracted a third marriage with Will Varno of whom, when she is asked, "Is he living or dead?" answers, "Living, I guess." There was only one child born of her marriage with Wright, a boy named C. W. Wright, and there were two girls from her last marriage, Mary and Ruby Varno. The first two children named Bass are both men, one of them being employed by the Hibernia Bank & Trust Company, in New Orleans, and the other by the defendant herein. Her son C. W. Wright, who she says is twenty years old, lives at Bogalusa and also works for the defendant company. Her two girls live with her at D'Lo. She has another brother, Ezra Berry, who lives in the state of Ohio. She owns property at D'Lo, Miss., on which she pays $17 or $18 taxes a year, has an interest in some other property which belonged to the estate of her father and mother, and has learned the trade of "ladies' hair-dressing," from which, however, she says she derives very little revenues. Her testimony is to the effect that her brother, John Berry, contributed from time to time various sums of money for her support. In the third week of August, 1927, for instance, she says he gave her $175. In January, 1928, he gave her $125, she says, and again in December, 1928, she speaks of him having given her $200.

She produced two witnesses, friends of hers, Claude Lee and John Haas. The first had a distinct recollection of having seen her brother John give her $190 some time in December, 1928, and when asked what did John have to say when he gave her

that money, he replies: "He didn't say anything, I said what was said, I made a miration about him having so much money, he said he had been coming and doing that before, he come up there and give her support." Haas, the other witness, raises the amounts still higher and has knowledge of two contributions of $250 each, one in January, 1928, and the other in December of the same year. On one occasion he is positive of the amount because he saw the money counted. He asked John Berry for a cigarette. Berry did not have any, so he called his sister and asked her to get the money he had just given her, and she brought out a wad, which on beholding he was forced to exclaim: "Eh! me, you've got a wad of it there, looked like a hundred dollars, he says it's more than a hundred dollars, and he give the boy fifteen cents. * * *" The money was then recounted, according to his testimony, and on being asked how much there was, he answers: "Two hundred and fifty dollars, 'scuseing the fifteen cents he taken out. I says, you're alright, and he says I am supposed to take care of the only sister I have, she cared for mamma, I have been doing this some time."

We have commented on and quoted from the testimony perhaps a bit more than was necessary in an effort to convey more strongly our impression of its gross exaggeration which makes it unworthy of serious consideration. The evidence shows that John Berry, the deceased employee, was supporting a woman in Bogalusa who bore the relation of a common-law wife to him, that he paid $10 out of his wages every month for rent, paid his grocery bills regularly, and he had bought an automobile which he had to return because of his inability to meet the installments as they became due. It would be unreasonable, as said by the learned district judge, "to think that a negro man living with and supporting another family in Bogalusa, earning small wages, buying automobiles and unable to pay for the cars, would be able to give Nancy Berry living a hundred miles away, who is a large, healthy, strong woman, any such money, or for that matter any sum whatever." He characterizes the entire testimony as pure fabrication.

We are satisfied that this plaintiff has not shown that she was "wholly and actually dependent" on her brother, as she had to be in order to recover compensation, and are convinced that her demand was properly rejected in the lower court.

ON APPLICATION FOR REHEARING

PER CURIAM. Our opinion in this case states that "this plaintiff has not shown that she was 'wholly and actually' dependent on her brother as she had to be in order to recover compensation."

On application for rehearing, our attention is directed to the fact, that under our compensation statute, it is not necessary for a sister to show that she is "wholly and actually dependent." It is urged that if she is only partially actually dependent upon the deceased employee's earnings, she may recover. That is correct. For partial dependency, she may recover in an amount proportionate to the sum she would receive in case she were wholly dependent. It was perhaps in following the pleadings in the case a bit too closely, that we may have used the words "wholly and actually" inadvertently.

A further consideration of the case however has not brought us to a different conclusion regarding the merits of her claim, and we are still convinced that the plaintiff has not proven any dependency which entitles her to compensation.

The application for rehearing is therefore denied.